UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| SALLY A. COUCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | 3:05-CV-317 |
| ) | (VARLAN/GUYTON) |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding the disposition by the District Court of the plaintiff's motion for summary judgment [Doc. 10] and the defendant's motion for summary judgment. [Doc. 12]. Plaintiff seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the defendant Commissioner.

The ALJ made the following findings:

    1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

    2. The claimant's obesity, arthritic, breathing, sleep apnea, and nervous disorders are considered "severe" based on the requirements in the Regulations 20 C.F.R. § 416.920(b).

3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. The claimant's depression and anxiety disorder impose no more than mild to moderate restriction of activities of daily living, ability to maintain social functioning, or ability to sustain concentration, persistence, or pace. She has experienced no extended episodes of mental decompensation, and she functions adequately outside of a highly supportive setting.

4. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

5. The claimant has the following residual functional capacity: a range of light exertion, provided she perform no work involving excessive vibration or frequent bending or stooping or squatting. She cannot perform work exposing her to concentrated levels of pulmonary irritants. She also cannot tolerate excessive stress or perform more than simple instructions.

6. The claimant is unable to perform any of her past relevant work (20 C.F.R. § 416.965).

7. The claimant is a "younger individual between the ages of 18 and 44" (20 C.F.R. § 416.963).

8. The claimant has "a limited education" (20 C.F.R. § 416.964).

9. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 C.F.R. § 416.968).

10.The claimant has the residual functional capacity to perform a significant range of light work (20 C.F.R. § 416.967).

> 11. Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.18 as a framework for decisionmaking, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs appear in the body of this decision.
>
> 12. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. § 416.920(g)).

(Tr. 29-30).

If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. See Warner v. Commissioner of Social Security, 375 F.3d 387 (6th Cir. 2004). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. See Crisp v. Secretary of Health and Human Services, 790 F.2d 450, 453 n.4 (6th Cir. 1986).

Plaintiff argues that the ALJ erred in ignoring Dr. Miga's opinion, in finding she retained a residual functional capacity ("RFC") for light[1] work, in determining that she was not credible, and in relying on the vocational expert's ("VE's") findings. First, she contends that the ALJ erred in totally ignoring treating psychiatrist Dr. Miga's opinion and that he failed to give reasons for rejecting Dr. Miga's opinion. (Tr. 180-277, 437-64). She argues that he treated her for bipolar disorder and prescribed several medications, noting that her symptoms impaired her

---

[1] Light work requires lifting and carrying 20 pounds occasionally and 10 pounds frequently. See 20 C.F.R. § 416.967(b).

3

daily activities, her ability to remember, concentrate, persist, and to maintain social interaction. Further, she contends that Dr. Miga noted that based on his treatment, she had a marked restriction in her activities of daily living; an extreme limitation in her ability to maintain social functioning; frequent deficiencies in her ability to concentrate, persist, or maintain pace that would result in her inability to complete tasks in a timely manner, whether in the workplace or elsewhere, and repeated (at least three or more) episodes of deterioration or decompensation in work or a work-like setting that would cause her to withdraw or experience an exacerbation of her symptoms. (Tr. 440).

Moreover, plaintiff contends that she "consistently complained about the degree of her mental impairment and how this impairment restricted her daily activities" and that her limited activities are not inconsistent with her assertion that she is unable to work. Plaintiff maintains that the ALJ 's "opinion of her ability to work was based strictly upon physical, and not mental, limitations" and that "the opinion of a consulting physician is not to be given greater weight than a treating physician." Lastly, plaintiff insists that the VE testified that based on the findings of Dr. Miga regarding the severity of plaintiff's mental impairment, she would not be able to perform her past work or any other job. Therefore, plaintiff contends that the ALJ erred by not including Dr. Miga's findings.

The Commissioner contends that substantial evidence supports the ALJ's RFC that plaintiff can perform a range of light work with some postural limitations against frequent bending, stooping, and squatting, no exposure to excessive vibration or pulmonary irritants[2], no

---

[2]The ALJ also limited plaintiff's exposure to vibration in because of her knee and back impairments and limited her exposure to pulmonary irritants because of her breathing problem.

4

excessive stress, and no more than simple instructions. (Tr. 27). The Commissioner disputes plaintiff's assertion that the ALJ ignored treating psychiatrist Dr. Miga's opinion, arguing that the ALJ expressly noted Dr. Miga's findings and then gave reasons why he did not assign them controlling weight. (Tr. 25-26). She points out that the ALJ noted Dr. Miga found plaintiff had a low IQ, a poor ability to process concepts, limited abstract reasoning, mood swings, frequent irritability, poor coping skills, symptoms of post-traumatic stress disorder, and a mild improvement in her symptoms with medication and therapy, as well as marked restrictions of activities of daily living, extreme difficulty in social functioning, frequent deficiencies of concentration, persistence or pace, and repeated episodes of decompensation. (Tr. 25-26, 438-40). The ALJ explained that he did not assign great weight to Dr. Miga's June 2004 opinion because it was inconsistent with plaintiff's mental therapy notes, which revealed a significant range of daily and other activities, such as caring for two small children, spending time visiting relatives and friends, going to church regularly, and performing in the church choir. (Tr. 26). Furthermore, the ALJ noted that plaintiff had not had referrals for urgent treatment or inpatient mental health treatment since December 2002 when she applied for benefits (Tr. 26, 289-91), noting that the evaluation at Overlook Center assessed moderate limitations of her activities of daily living, interpersonal functioning, concentration, task performance, pace, and adaptation to change. (Tr. 26, 190). Therefore, the Commissioner maintains that the ALJ clearly considered Dr. Miga's opinion and gave reasons for rejecting it, noting that Dr. Miga's opinion was

---

(Tr. 27).

unsupported by clinical findings and inconsistent with the other medical evidence in the record. (Tr. 25-26).

The Commissioner asserts, however, that the ALJ's RFC finding is consistent with the opinions of consultative psychological examiner Dr. Kenney; state agency, reviewing psychologist Dr. Kirk; and consultative examiner Dr. Summers. Specifically, the Commissioner points out that the opinions of Dr. Kenney and Dr. Kirk support the ALJ's finding that plaintiff could perform simple tasks that did not expose her to excessive stress. (Tr. 127). Dr. Kenney found that plaintiff's ability to understand and remember were not significantly limited; that plaintiff had limitations of concentration, persistence, social interaction, and adaptation, but he did not specify the degree of limitation. (Tr. 291). He did note that plaintiff lived with family members; did household chores, such as laundry, sweeping, dishwashing, cooking; shopped; attended church twice each week, and occasionally went out to dinner and dancing. (Tr. 290-91). Dr. Kirk, who reviewed Dr. Kenney's report (Tr. 289-93) and the records of plaintiff's treating psychiatrist and therapist, noted that one evaluation indicated moderate limitations in mental functioning; that plaintiff's records indicated she had multiple medical problems and depression, with poor coping skills, limited problem-solving abilities, and periods of agitation but no true psychosis; that he completed a functional capacity assessment and found that plaintiff was able to understand simple and detailed, non-complex tasks. (Tr. 306, 310). Dr. Kirk indicated plaintiff could perform simple and detailed tasks over a work week but would have some difficulty with extended concentration; that although she could not work with the general public, she could relate to supervisors and co-workers with some difficulty; and that she could respond

6

to infrequent changes and set limited goals. (Tr. 306, 310). In sum, the Commissioner maintains that the opinions of Drs. Kenney and Kirk support the ALJ's finding that plaintiff's mental impairments limited her to simple tasks that did not involve exposure to stress. (Tr. 27).

With respect to plaintiff's physical impairments, Dr. Summers opined that plaintiff would have difficulty with heavy and moderate exertion but could tolerate sedentary[3] and low intensity work, noting that although she could lift up to 20 pounds and could stand and walk for up to 6 hours in a single workday, she had a limited ability to bend, stoop, and squat because of knee and back pain. (Tr. 281). Moreover, she notes that Dr. Summers' opinion that plaintiff could walk and stand for long periods of time is consistent with plaintiff's testimony that she could walk one mile and stand for one and one-half hours at a time. (Tr. 59-60). Thus, the Commissioner found that Dr. Summers' opinion is consistent with the ALJ's finding that plaintiff's physical impairments limited her to light work that did not involve frequent bending, stooping, or squatting. (Tr. 27).

Next, the Commissioner contends that the ALJ reasonably based his credibility determination not only on the medical findings, the statements by plaintiff and her treating sources, and her course of treatment, which have already been addressed herein, but also the inconsistencies among her statements at the hearing. (Tr. 24-28). She points to the following inconsistencies: plaintiff testified that she received all D's and F's in school (Tr. 55), whereas

---

[3]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary to carry out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

7

her school records indicate she received passing grades (Tr. 158-59); although plaintiff stated she could not write more than her name (Tr. 99), she testified that she had no problem writing answers to her Social Security application (Tr. 55-56); she testified that she could not read but then marked a form questionnaire that she could read (Tr. 55, 99) and admitted she passed a written driver's license examination (Tr. 69); that she claimed to avoid crowds (Tr. 66) but during a psychological evaluation she related that on several occasions she went night club dancing and out to dinner (Tr. 291) and attended church weekly, even performing in the choir. (Tr. 290, 446, 455-56).

Finally, the Commissioner points out that after deciding that plaintiff could not perform any past work (Tr. 28), the ALJ relied on VE testimony that plaintiff could perform other work, such as the jobs of dishwasher, inspector, assembler, and production worker. (Tr. 74-75). She explains that because the ALJ discounted Dr. Miga's severe restrictions, he was not required to include them in the hypothetical.

In light of the foregoing, I find no error by the ALJ. Plaintiff incorrectly asserts that the ALJ ignored Dr. Miga's opinion and failed to give reasons for not accepting his opinion. However, the ALJ **did** discuss Dr. Miga's findings and gave reasons for rejecting the opinion:

> a treating psychiatrist, Dr. Miga, stated that: Ms. Couch had a low IQ (although no formal testing had occurred); she had a poor ability to process concepts; she had limited abstract reasoning; she had mood swings and frequent irritability; she had poor coping skills; she had symptoms of post-traumatic stress disorder; and her mental symptoms had improved only mildly with medication and psychotherapy. "Marked" restrictions of activities of daily living, an "extreme" difficulty in

8

> maintaining social functioning, "frequent"
> deficiencies of concentration, persistence, or pace,
> and "repeated" episodes of mental decompensation
> were described. . . . The undersigned does not
> assign great evidentiary weight to the June 2004
> opinion, as it appears significantly inconsistent with
> the mental health therapy notes, which reveal a
> significant range of daily and other activities
> including caring for two small children and
> spending time visiting relatives and friends, regular
> church attendance and performance in its choir, a
> denial of suicidal ideation or planning, and no
> referrals to urgent care or inpatient mental health
> facilities for any mental decompensation.

(Tr. 25-26). Therefore, plaintiff's argument is without merit. Moreover, I note that while the record contains several treatment notes from Dr. Miga (Tr. 249, 261, 263-65, 272), most of plaintiff's mental health counseling actually was by Joy Murphey, a licensed social worker (Tr. 63, 65, 67, 196-202, 204-16, 231-48, 250-55, 257, 441-64) Young v. Secretary of Health and Human Services, 925 F.2d 146, 151 (6th Cir. 1990) (ALJ need not adopt a physician's assessment where the physician does not offer objective medical evidence to support the assessment), and Ms. Murphey even signed, along with Dr. Miga, the mental assessment form. (Tr. 440) (information from a social worker can be considered under 20 C.F.R. § 416.913(e), but is not considered information from an acceptable medical source under 20 C.F.R. § 416.913(a)).

Similarly, I find no error with the ALJ's RFC finding, his credibility determination, or his findings regarding the VE. With respect to his RFC assessment, the ALJ reasonably relied on the findings of consultative examiner Dr. Summers, who found that plaintiff

9

could perform light work, for the plaintiff's physical limitations and on consultative psychological examiner Dr. Kenney and state agency reviewing physician Dr. Kirk regarding plaintiff's mental limitations. Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420, 1428 (1971) (a written report of a consultant physician who has examined the claimant can constitute substantial evidence); see Loy v. Secretary of Health and Human Services, 901 F.2d 1306, 1308-09 (6th Cir. 1990) (nonexamining physician is qualified to review the medical record and provide a reliable opinion, even though he did not see the claimant); Moon v. Sullivan, 923 F.2d 1175, 1179-83 (6th Cir. 1990) (court can rely on the opinions of a state agency physician to reject a treating physician's opinion). Dr. Kenney found that plaintiff's ability to understand and remember was not significantly limited, although her concentration, persistence, social interaction, and adaptation were limited (Tr. 291), and Dr. Kirk concluded that the plaintiff can understand and remember simple and detailed, non-complex tasks; would have some difficulty with extended concentration but could still perform simple and detailed tasks over the full work week; could not interact with the general public but could relate to supervisors and co-workers with some, although not substantial, difficulty; and could respond to infrequent changes and set limited goals. (Tr. 310). Consequently, I find that the ALJ did not err in relying on the opinions of Dr. Kenney and Dr. Kirk to find that plaintiff's mental impairments only limited her to simple tasks that did not involve exposure to stress. (Tr. 27).

Similarly, I find no error with the ALJ's credibility determination. Jones v. Commissioner of Social Security, 336 F.3d 469, 476 (6th Cir. 2003) (ALJ's credibility determination entitled to great weight and deference because he has observed the testimony).

10

Case 3:05-cv-00317   Document 14   Filed 05/16/06   Page 10 of 12   PageID #: 10

The ALJ noted that "the evidence of record shows Ms. Couch to have engaged in such daily and other activities as self-care and grooming, simple meal preparation, dish washing, visiting with friends and relatives, attending church regularly, singing in a church choir, and watching two small children," and thus, "[t]he claimant appears not to have had, for any continuous period of 12 months or greater, no more than mild to moderate restriction of activities of daily living, or of ability to maintain social functioning, or of ability to sustain concentration, persistence, or pace." (Tr. 26, 202, 205, 442, 444-46). Moreover, the ALJ noted that the record contains several inconsistencies, such as plaintiff's testimony that she had difficulty in dealing with crowds, although she acknowledged that she sang in the church choir (Tr. 28, 442, 446) and went to a night club with her son. (Tr. 28, 202). 20 C.F.R. 416.929(c)(4) (ALJ considers any inconsistencies in the record and conflicts with the rest of the evidence).

Finally, because the ALJ rejected Dr. Miga's severe limitations, the ALJ did not err in rejecting VE testimony that included these limitations. (Tr. 74-75) Casey v. Secretary of Health and Human Services, 987 F.2d 1230, 1235 (6th Cir. 1993) (ALJ required to incorporate into the hypothetical questions only those limitations accepted as credible by the finder of fact).

11

In light of the foregoing, it is hereby **RECOMMENDED**[4] that the plaintiff's motion for summary judgment [Doc. 10] be **DENIED** and that the Commissioner's motion for summary judgment [Doc. 12] be **GRANTED**.

Respectfully submitted,

<u>     s/H. Bruce Guyton     </u>
United States Magistrate Judge

---

[4] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. <u>Thomas v. Arn</u>, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide <u>de novo</u> review where objections to this report and recommendation are frivolous, conclusive or general. <u>Mira v. Marshall</u>, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. <u>Smith v. Detroit Federation of Teachers</u>, 829 F.2d 1370 (6th Cir. 1987).

12